## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MARGARITA O. DONATO,          )
                             )
          Plaintiff,          )
                             )
     v.                       )     C.A. No. 18-476-CFC-MPT
                             )
NANCY A. BERRYHILL,           )
SOCIAL SECURITY DEPUTY        )
COMMISSIONER FOR OPERATIONS,  )
                             )
          Defendant.          )                    **FILED**

### REPORT AND RECOMMENDATION

## I.     INTRODUCTION

This action arises from the denial of Plaintiff's claim for Social Security benefits.

On April 15, 2014, Plaintiff filed an application for Social Security Disability Insurance

Benefits under Title II of the Social Security Act.[1]  In her initial application and disability

report, Plaintiff alleged she became disabled on October 11, 2011 due to conditions

including:  major depression, hypertension, diabetes, anxiety, mood disorder, and

asthma.[2]  Her claim was denied initially on August 7, 2014, and denied again upon

reconsideration on December 8, 2014.[3]  On February 3, 2015, Plaintiff filed a written

request for a hearing, and a video hearing was held by the administrative law judge

("ALJ") on April 18, 2017.[4]  At the hearing, testimony was provided by Plaintiff, who was

---

[1] D.I. 8-3 at 77.

[2] *Id.* at 46-47.

[3] *Id.* at 77.

[4] *Id.* ("The [Plaintiff] appeared in New Castle, Delaware, and the [ALJ] presided
over the hearing from St. Louis, Missouri").

represented by counsel, and a vocational expert ("VE"), Teresa Wolford.[5] The ALJ

found Plaintiff did not qualify as "disabled" under sections 216(i) and 223(d) of the

Social Security Act and denied her request for benefits in a decision dated June 17,

2017.[6] Following the ALJ's unfavorable decision, Plaintiff filed a request for review,

which the Appeals Council subsequently denied on January 23, 2018.[7] Plaintiff brought

a civil action in this court challenging the ALJ's decision on March 28, 2018, and

presently before the court are the parties' cross motions for summary judgment.[8] For

the following reasons, it is recommended that Defendant's motion be denied, Plaintiff's

motion be granted, and the case remanded to the ALJ to address the following

limitations in the hypothetical question posed to the VE.

## II.    BACKGROUND

Plaintiff was born on September 25, 1963.[9] She has a high school education, a

two-year Associate's Degree in information processing, and past work as a receptionist,

medical secretary, copy editor, and customer service representative.[10] She was 48

years old at the onset of her alleged disability, which dates from October 1, 2006.[11]

Plaintiff alleges several physical and mental impairments limiting her ability to maintain

employment and contributing to "her inability to perform and sustain work."[12] Although

---

[5] *Id.*

[6] D.I. 8-3 at 86.

[7] D.I. 8-2 at 1 (finding no reason to review ALJ decision and denying request for review).

[8] D.I. 1 (Pl. Compl.); D.I. 14 (plaintiff's motion for summary judgment); D.I. 18 (defendant's motion for summary judgment).

[9] *Id.* at 19; D.I. 8-3 at 46.

[10] D.I. 8-3 at 85.

[11] *Id.* at 46.

[12] D.I. 15 at 3; *see* D.I. 8-3 at 83.

2

she worked after her alleged onset date, the ALJ found this work activity "did not rise to the level of substantial gainful activity as defined by 20 C.F.R. 404.1571 until 2016."[13] Plaintiff alleges disability due to asthma, left knee pain, depressed mood, and social anxiety.[14]  Plaintiff argues the ALJ provided inadequate weight to her treating medical providers' opinions.[15]  Further, Plaintiff argues the ALJ erred in determining her mental impairments were not severe and contends the ALJ posed a defective hypothetical question to the VE by failing to include the ALJ's finding of her mild limitation adapting and managing herself.[16]  To be eligible for disability benefits, Plaintiff must demonstrate she is disabled within the Acts, which have the same standard, as discussed below.

## A.   Evidence Presented

Plaintiff allegedly suffers from a myriad of physical and mental ailments, but, as noted above, the issues presented to the court are limited to alleged errors by the ALJ when assessing her mental ailments.[17]  Plaintiff provided records of extensive notes from her treating medical providers, including treatment records from Focus Behavioral Health and relevant disability questionnaires.[18]  Throughout her treatment, Plaintiff's mental conditions showed fluctuating improvements, where her treating doctor found either improvements or generally normal findings over time, and Plaintiff denied psychiatric problems on multiple occasions.[19]  Plaintiff alleges the ALJ failed to consider

---

[13] D.I. 8-3 at 79; see D.I. 8-5 at 156, 159-60, 162-63.

[14] D.I. 8-3 at 83; see D.I. 8-6 at 178, 212, 223, 226.

[15] D.I. 15 at 17-19; see D.I. 8-3 at 84.

[16] D.I. 15 at 11-17; see D.I. 8-2 at 32; see 20 C.F.R. Pt. 404, Subpt. P, App. 1.
[17] Id. at 2, 11-17.

[18] See D.I. 8-3 at 80, 84 (discussing evidence in the record pertaining to Plaintiff's alleged mental impairments).

[19] D.I. 8-10 at 502-03, 508, 515; D.I. 8-14 at 785, 791.

3

a number of office visits that reported symptoms of depressed mood, low energy, crying spells, poor concentration, the inability to get out of bed, and neuro vegetative symptoms.[20] However, upon examination at these visits, Plaintiff was consistently found "to have no apparent serious mental status abnormalities."[21] Accordingly, as noted by the ALJ, the record lacks objective medical findings to support her assertions regarding the severity of her mental ailments.[22]

## 1. Physical Impairments[23]

Plaintiff has a history of left knee pain and shortness of breath since the alleged onset date.[24] The record contains objective medical evidence establishing the medical existence of degenerative joint disease in her left knee, asthma, and obesity.[25] However, no evidence of an active disease was found by diagnostic imaging of Plaintiff's chest in April 2014, and Plaintiff was never hospitalized overnight due to asthma related complications during the alleged period of disability.[26]

Diagnostic imaging of Plaintiff's left knee demonstrated mild/moderate degenerative changes in January 2015.[27] Additionally, treatment records document normal muscle strength and full range of motion in her left knee as well as normal gait

---

[20] D.I. 15 at 13.
[21] D.I. 8-10 at 505-06; see id. at 502-03, 508, 515 (discussing mental status at office visits); see also id. at 473 ("Anxiety overall stable.").
[22] D.I. 8-3 at 80-81.
[23] Plaintiff does not raise issue with the ALJ's findings in regard to her physical symptoms. See D.I. 15. Therefore, the ALJ findings of the record are recited below.
[24] D.I. 8-3 at 83.
[25] Id.
[26] D.I. 8-12 at 642; see id. at 631; see D.I. 8-6 at 183, 188, 215-16; see D.I. 8-3 at 83.
[27] D.I. 8-14 at 733-34; see D.I. 8-3 at 83.

in April 2015 and November 2015.[28]  No significant lung or left knee abnormalities were

found during physical examinations conducted in March, July, September, and

November of 2016.[29]  Treatment reports further noted Plaintiff was observed in no acute

distress and walking with a normal gait in February 2017 and March 2017.[30]  Plaintiff

presented evidence of impairments including:  hypertension, hypercholesterolemia, and

diabetes mellitus.[31]  The ALJ found these conditions medically determinable but non-

severe, and Plaintiff does not dispute this finding.[32]

Plaintiff further alleged back pain, and the ALJ reasonably found this condition

non-medically determinable because the objective medical evidence in the record failed

to establish the medical existence of this condition.[33]  Additionally, Plaintiff has a history

of diabetes and obesity and was admitted to Christiana Care for treatment of elevated

glucose and high blood sugar in May 2011.[34]

State Disability Determination Services ("DDS") medical consultants Carl

Bancoff, M.D. and Michael H. Borek, D.O. opined, with specific references to evidence

within the record, that Plaintiff is capable of performing light work with additional

environmental limitations.[35]  Dr. Stephen Kushner, M.D., Plaintiff's treating physician,

also indicated Plaintiff is capable of sitting and standing or walking for at least six hours

---

[28] D.I. 8-15 at 847-48, 863; *see* D.I. 8-3 at 83.
[29] D.I. 8-13 at 655, 667, 688; D.I. 8-15 at 834; *see* D.I. 8-3 at 83.
[30] D.I. 8-15 at 826; D.I. 8-16 at 910; *see* D.I. 8-3 at 83.
[31] D.I. 8-9 at 432; D.I. 8-10 at 473; D.I. 8-11 at 547, 558, 564, 578; D.I. 8-13 at 668, 689, 693; D.I. 8-15 at 828-29, 835, 843, 864; *see* D.I. 8-3 at 79.
[32] D.I. 8-3 at 81-82; *see* D.I. 15.
[33] D.I. 8-9 at 430, 436-37, 450, 458; D.I. 8-11 at 554; D.I. 8-12 at 609; D.I. 8-13 at 688; D.I. 8-15 at 826, 833, 847, 856, 863, 871; *see*  D.I. 8-3 at 80.
[34] D.I. 8-7 at 256-64.
[35] D.I. 8-3 at 51-55, 63-66; *see id.* at 83-84.

5

in an eight-hour workday, as shown in Plaintiff's disability questionnaire.[36] The questionnaire further indicates Plaintiff is not limited in her ability to lift and carry or perform postural activities, as supported by Dr. Kushner's treatment records and the results of Plaintiff's left knee MRI in January 2015.[37] The ALJ determined the evidence in the record supports light work restrictions, and he noted Plaintiff's residual functional capacity was reduced to accommodate such limitations.

### 2. Mental Impairments

Plaintiff has been treated for symptoms of bipolar disorder and anxiety for over ten years.[38] She received treatment for her mental impairments from two psychiatrists and a mental health therapist.[39] Dr. Ranga Ram, Plaintiff's most recent psychiatrist, provided a complete psychiatric evaluation on November 7, 2012.[40] Plaintiff's cognitive functioning was normal and intact, but she was depressed and anxious.[41] Dr. Ram diagnosed Plaintiff with "major depressive disorder, recurrent, severe" and prescribed medication.[42]

Subsequently, Plaintiff improved through April 2013 when Dr. Ram recorded Plaintiff had "no apparent serious mental status abnormalities."[43] By July 2013, Plaintiff self-reported lack of stability and decreased ability to function at home due to her mood,

---

[36] D.I. 8-16 at 930; see D.I. 8-3 at 84.
[37] D.I. 8-10 at 464-97; D.I. 8-11 at 540-89; D.I. 8-13 at 645-732; D.I. 8-14 at 755-56; D.I. 8-16 at 931; see D.I. 8-3 at 84.
[38] D.I. 15 at 3; D.I. 21 at 3.
[39] D.I. 15 at 3.
[40] D.I. 8-10 at 499-50.
[41] Id. at 500.
[42] Id.
[43] Id. at 502-03, 505.

along with complaints of neuro vegetative state, early morning fatigue, lack of energy, and poor motivation.[44] Upon examination, Dr. Ram prescribed Ambien for sleep after finding Plaintiff appeared downcast, minimally communicative, anxious, and exhibited poor insight.[45] By October 2013, she reported slight improvement.[46] In March 2014, she reported further symptoms of depression and anxiety, and Dr. Ram prescribed additional medications.[47] Plaintiff continued showing signs of depression until reporting improvements in September 2014.[48] Signs of anxiety remained, but Plaintiff's thinking, cognitive functioning, and memory were normal.[49]

On July 23, 2014, a state agency physician, Dr. Christopher King, Psy.D., conducted a psychiatric review of Plaintiff and found she did not have any restrictions in activities of daily living, and maintaining social functioning, concentration, persistence, or pace.[50] Dr. King found Plaintiff's mental health condition non-severe.[51] On November 28, 2014, a second state agency physician, Dr. Carlene Tucker-Okine, Ph.D., affirmed this finding and noted Plaintiff's mood showed no signs of depression or elevation.[52]

In June 2015, Plaintiff experienced further improvement and returned to work, but Dr. Ram noted she still showed symptoms of depressed mood, neuro vegetative

---

[44] *Id.* at 506.
[45] *Id.*
[46] D.I. 8-10 at 510.
[47] *Id.* at 511.
[48] *Id.* at 513, 538.
[49] D.I. 8-10 at 538.
[50] D.I. 8-3 at 51-52.
[51] *Id.* at 52.
[52] *Id.* at 65.

symptoms, pessimistic thoughts, and low self-esteem.[53] Plaintiff continued to complain

of anxiety and nervousness in August 2016, and she voluntarily admitted herself to the

Rockford Center after experiencing symptoms of depression and feelings of suicide in

September 2016.[54] She was diagnosed with bipolar disorder and generalized anxiety

disorder.[55] Plaintiff was also admitted to Christiana Hospital, Meadowwood Hospital,

and Rockford Center "for deteriorating, mental health on multiple occasions from 2011

to 2016."[56]

### B. Hearing Testimony

#### 1. Plaintiff's Testimony

At the administrative hearing on April 18, 2017, Plaintiff testified to her

background, work history, education, and alleged disability.[57] As noted previously,

Plaintiff has an Associate's Degree in information processing.[58] She testified that

concentration problems prevented her from maintaining employment.[59] Plaintiff

discussed her work as a full-time cafeteria worker for Red Clay Consolidated School

District beginning in February 2015 and the events surrounding her termination for poor

work performance in October 2015.[60] Additionally, Plaintiff testified about her

employment as a social worker for PATHS, LLC and her termination after approximately

---

[53] D.I. 8-14 at 811.
[54] D.I. 8-11 at 597; D.I. 8-14 at 785, 789-95.
[55] D.I. 8-11 at 599.
[56] D.I. 15 at 6; *see* D.I. 8-7 at 287-305; *see* D.I. 8-11 at 597-607.
[57] D.I. 8-2 at 17-30.
[58] D.I. 8-3 at 83; *see* D.I. 8-2 at 19.
[59] D.I. 8-2 at 20-23.
[60] *Id.* at 20.

ten months "as a result of worsening psychiatric symptoms."[61]

She testified about her competitive employment with a media company, where she trained and edited commercials.[62] She claimed she was terminated because she could not keep up with the pace and task of editing commercials.[63] Plaintiff further discussed her employment with Nemours Foundation, where she was employed as a receptionist.[64] She claimed she was terminated because she "could not keep up" with scheduling tasks.[65] She discussed two other positions where she worked as a customer service representative, prior to her alleged onset date, and she reported no issues in these positions.[66]

Plaintiff claimed she felt depressed on the day of the hearing and complained of difficulty with concentration.[67] Plaintiff explained she experiences mood swings and deep depression "every other couple months."[68] She further testified that she is married, lives with her spouse and two adult children, and is able to drive an automobile twice per week.[69] Plaintiff also reads, attends church, and volunteers to clean the church once per week.[70]

---

[61] *Id.* at 19.
[62] *Id.* at 21-22.
[63] *Id.* at 22.
[64] *Id.*
[65] D.I. 8-2 at 22.
[66] *Id.* at 23.
[67] *Id.* at 24.
[68] *Id.* at 25.
[69] *Id.* at 18.
[70] *Id.* at 28.

## 2. Vocational Expert Testimony

Testimony was provided at the hearing by VE, Teresa Wolford.[71] Ms. Wolford characterized Plaintiff's past work at the sedentary exertional level, with specific vocational preparation levels of four (4) and six (6).[72] She addressed hypothetical questions from the ALJ.

The ALJ asked whether an individual of the same age, education, and background could perform work at a light exertional level if "limited to only occasional crawling or climbing ladders, ropes, or scaffolds, and this individual could not tolerate concentrated exposure to temperature extremes, humidity, strong odors, fumes, dust, chemicals, or other respiratory irritants."[73] Ms. Wolford testified that an individual with these limitations could perform all of Plaintiff's past relevant work.[74]

The ALJ added to the hypothetical the limitations of only simple, routine, and repetitive tasks, with only brief and superficial interaction with the public or co-workers.[75] Ms. Wolford testified this individual would not be capable of performing Plaintiff's past work.[76] However, Ms. Wolford identified several jobs in the national economy that an individual having the limitations of this hypothetical could perform.[77]

## C. The ALJ's Finding of Facts and Conclusions of Law

1.  Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017.

---

[71] D.I. 8-2 at 30.
[72] *Id.* at 31.
[73] *Id.* at 32.
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.* at 32-33.

2.    Plaintiff did not engage in substantial gainful activity after October 11, 2011, the alleged onset date until 2016 (20 C.F.R. 404.1571 *et seq.*).

3.    Plaintiff has the following severe impairments: asthma, obesity, and degenerative joint disease in the left knee (20 C.F.R. 404.1520(c)).

4.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5.    Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except she is limited to no more than occasionally crawling and climbing ladders, ropes, or scaffolds. Additionally, Plaintiff is limited to no concentrated exposure to respiratory irritants.

6.    Plaintiff is capable of performing past relevant work as a receptionist, a medical secretary, a copy editor, and a customer service representative. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity (20 C.F.R. 404.1565).

7.    Plaintiff has not been under a disability, as defined in the Social Security Act, from October 11, 2011, through the date of this decision (20 C.F.R. 404.1520(f)).[78]

Conclusively, "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on April 15, 2014, [Plaintiff] is not disabled under sections 216(i) and 223(d) of the Social Security Act."[79]

## III.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment

Each party moved for summary judgment.[80] In determining the appropriateness

---

[78] D.I. 8-3 at 79-85.

[79] *Id.* at 86 (ordering dismissal and denying request for a hearing).

[80] D.I. 14 (Plaintiff's motion for summary judgment); D.I. 18 (Defendant's motion for summary judgment).

of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[81] If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[82]

This standard does not change merely because there are cross-motions for summary judgment.[83] Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[84]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[85]

## B.    Court's Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of the ALJ's decision by the district court. The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not include substantial evidence to support the ALJ's decision. The Commissioner's factual decisions are upheld if supported by substantial evidence.[86] Substantial evidence means less than a

---

[81] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).

[82] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).

[83] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

[84] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

[85] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

[86] 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckle*, 806 F.2d 1185, 1190 (3d Cir. 1986).

12

preponderance of the evidence, but more than a mere scintilla of evidence.[87] As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[88]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.[89] The court's review is limited to the evidence that was actually presented to the ALJ.[90] The Third Circuit has explained that a:

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., evidence offered by treating physicians) or if it really constitutes not evidence but mere conclusion.[91]

Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.[92] Even if the court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision so long as that decision is supported by substantial evidence.[93]

Where "review of an administrative determination is sought, the agency's

---

[87] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

[88] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[89] *Monsour*, 806 F.2d at 1190.

[90] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).

[91] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

[92] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

[93] *Monsour*, 806 F.2d at 1190-91.

decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."[94] In *Securities & Exchange Commission v. Chenery Corp.*, the Supreme Court found that a "reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."[95] The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[96] Thus, this court's review is limited to the four corners of the ALJ's decision.[97]

## C.    ALJ's Disability Determination Standard

The Supplemental Social Security Income (SSI) program was enacted in 1972 to assist "individuals who have attained the age of 65 or are blind or disabled" by setting a minimum income level for qualified individuals.[98] A claimant – in order to establish SSI eligibility – bears the burden of proving that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of or not less than twelve months."[99] Moreover, "the physical or

---

[94] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).

[95] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

[96] *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

[97] *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).

[98] *Sullivan v. Zebley*, 493 U.S. 521, 524 (1990) (citing 42 U.S.C. § 1381 (1982 ed.)).

[99] 42 U.S.C. § 423(d)(1)(A).

14

mental impairment or impairments must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy."[100] Furthermore, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are evidenced by medically acceptable clinical and laboratory diagnostic techniques.[101]

### 1. Five-Step Test.

The Social Security Administration uses a five-step sequential claim evaluation process to determine whether an individual is disabled.[102]

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. If a claimant is found to be engaged in substantial activity, the disability claim will be denied.
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. The claimant bears the burden of demonstrating an inability to return to her past relevant work. If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
> At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other

---

[100] 42 U.S.C. § 423(d)(2)(A).

[101] 42 U.S.C. § 423(d)(3).

[102] 20 C.F.R. § 416.920(a); see also Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

15

available work in order to deny a claim of disability. The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step.[103]

If the ALJ determines that a claimant is disabled at any step in the sequence, the analysis ends.[104]

## 2. Weight Afforded Treating Physicians

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight."[105] Moreover, such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on record.[106]

The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled.[107] If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical

---

[103] *Plummer*, 186 F.3d at 427-28.

[104] 20 C.F.R. § 404.1520(a).

[105] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

[106] *Fargnoli*, 247 F.3d at 43.

[107] *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429).

16

evidence."[108] If an opinion is rejected, then the ALJ must provide an explanation for the rejection. However, the explanation need not be exhaustive, but rather "in most cases, a sentence or short paragraph would probably suffice."[109]

However, a statement by a treating source that a claimant is "disabled" is not a medical opinion; rather, it is an opinion on an issue reserved to the ALJ because it is a finding that is dispositive of the case.[110] Therefore, only the ALJ can make a disability determination.

### 3.    Factors in Evaluating Credibility[111]

A claimant's statements and reports from medical sources and other persons with regard to the seven factors, noted above, along with any other relevant information in the record, provide the ALJ with an overview of the subjective complaints, and are elements to the determination of credibility.

Consistency with the record, particularly medical findings, supports a claimant's credibility. Since the effects of symptoms can often be clinically observed, when present, they tend to lend credibility to a claimant's allegations. Therefore, the adjudicator should review and consider any available objective medical evidence in evaluating the claimant's statements. An applicant's claims, however, may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show noncompliance with prescribed treatment.

---

[108] *Plummer*, 186 F.3d at 429.

[109] *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

[110] *See* 20 C.F.R. § 416.927 (e)(1).

[111] SSR 16-3p.

Findings of fact by state agency medical and psychological consultants and other physicians and psychologists regarding the existence and severity of impairments and symptoms, and opinions of non-examining physicians and psychologist are also part of the analysis. Such opinions are not given controlling weight. However, the ALJ, although not bound by such findings, may not ignore them and must explain the weight afforded those opinions in his decision.

Credibility is one element in determining disability. The ALJ must apply his finding on credibility in step two of the five-step disability determination process, and may use it at each subsequent step.

The decision must clearly explain – provide sufficiently specific reasons based on the record – to the claimant and any subsequent reviewers, the weight afforded to the claimant's statements and the reasons therefore.

The law recognizes that the claimant's work history should be considered when evaluating the credibility of her testimony or statements.[112] A claimant's testimony is accorded substantial credibility when she has a long work history, which demonstrates it is unlikely that, absent pain, she would have ended employment.[113]

### 5. Medical Expert Testimony

The onset date of disability is determined from the medical records and reports

---

[112] 20 C.F.R. § 404.1529(a)(3).
[113] *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981)). In *Podedworny*, the claimant worked for thirty-two years as a crane operator for one company. He had a ninth grade education and left his employment after the company physicians determined that his symptoms of dizziness and blurred vision prevented him from safely performing his job.

and other similar evidence, which requires the ALJ to apply informed judgment.[114] "At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred."[115]

## IV. DISCUSSION

### A. Parties' Contentions

In her appeal, Plaintiff argues the ALJ failed to properly weigh the medical opinion evidence provided by treating physicians, Drs. Kushner and Ram.[116] She contends the ALJ's findings disregarded records documenting the severity of Plaintiff's bipolar disorder and anxiety.[117] Furthermore, Plaintiff claims the hypothetical question posed to the VE failed to describe all of her credibly established impairments; specifically, the mild limitation of adapting and managing herself.[118]

Alternatively, Defendant contends the ALJ reasonably concluded Plaintiff was not disabled under the stringent requirements of the Act and Regulations. Defendant argues the ALJ appropriately applied the sequential evaluation process in his determination that Plaintiff's bipolar and anxiety disorder were not severe impairments, the ALJ properly considered the opinions of Drs. Kushner and Ram, and the ALJ's hypothetical question to the VE was not required to include the mild limitation of adapting and managing oneself.[119] The overarching issue is whether the ALJ's

---

[114] SSR 83-20.
[115] *Id.*
[116] D.I. 15 at 11-15.
[117] *Id.*
[118] *Id.* at 15-20.
[119] D.I. 19 at 8-14.

19

determination that Plaintiff is not disabled is supported by substantial evidence.

## B.    Disability Analysis

Title II of the Social Security Act, 42 U.S.C. § 423(a)(l)(D), "provides for the
payment of insurance benefits" to those who contributed to the program and suffer from
a physical or mental disability.[120]  In order to qualify for disability insurance benefits, a
claimant must establish she was disabled prior to the date she was last insured.[121]  A
"disability" is defined as the inability to do any substantial gainful activity because of any
medically determinable physical or mental impairment, which either could result in
death or has lasted or can be expected to last for a continuous period of at least 12
months.[122]  To be disabled, the severity of the impairment must prevent return to
previous work, and considering age, education, and work experience, restrict "any other
kind of substantial gainful work which exists in the national economy."[123]

In determining whether a person is disabled, as discussed previously, the
Commissioner is required to perform a five-step sequential analysis.[124]  If a finding of
disability or non-disability can be made at any point in the sequential process, the
Commissioner does not review the claim further.[125]  If in the five-step sequential
analysis the claimant's impairments are found to be severe, the Commissioner, at the
third step, compares the claimant's impairments to a list of impairments (the "listings")

_____

[120] *Bowen*, 482 U.S. at 140.
[121] 20 C.F.R. § 404.131.
[122] 42 U.S.C. §§ 423(d)(l)(A), 1382(c)(a)(3).
[123] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).
[124] 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422,427-28 (3d
Cir. 1999).
[125] 20 C.F.R. § 404.1520(a)(4).

that are presumed severe enough to preclude any gainful work.[126] If a claimant's impairments, either singularly or in combination, fail to meet or medically equal any impairments within the listing, the analysis continues to step four and five.[127] At step four, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work.[128] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [her] impairment(s)."[129] "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work."[130]

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude adjusting to any other available work.[131] At this final step, the burden is on the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[132] In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments and often seeks the assistance of a vocational expert.[133]

### 1.    Weight Accorded to Medical Opinion Evidence

It is the exclusive responsibility of the ALJ to weigh the evidence in the record as

---

[126] 20 C.F.R. § 404.1520(a)(4)(iii); see also Plummer, 186 F.3d at 428.
[127] 20 C.F.R. § 404.1520(e).
[128] 20 C.F.R. § 404.1520(a)(4)(iv); see also Plummer, 186 F.3d at 428.
[129] Fargnoli, 247 F.3d at 40.
[130] Plummer, 186 F.3d at 428.
[131] 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); see also Plummer, 186 F.3d at 428.
[132] Plummer, 186 F.3d at 428.
[133] Id.; see Podedworny, 745 F.2d at 218; see 20 C.F.R. § 404.1523.

a whole in making a disability decision.[134]  The evidence presented to the ALJ may contain differing medical opinions from both treating and non-treating physicians, as well as other testimony.[135]  Normally, the evidence presented by the treating physician is given controlling weight, as that individual may be most acquainted with the medical history of the claimant.  However, in circumstances where the treating physician's opinion is not consistent with the record as a whole or is not well supported by "medically acceptable clinical and laboratory diagnostic techniques," an ALJ may reasonably accord little weight to the treating physician's opinion.[136]  Plaintiff argues the ALJ failed to properly weigh the medical opinion from treating physician Dr. Kushner and psychiatrist Dr. Ram.[137]  The court finds proper weight was given to both medical opinions, and the evidence supports this decision.

### a.    Dr. Ram

The ALJ assigned little weight to the opinion of treating psychiatrist Dr. Ram.[138] Dr. Ram's questionnaire determined Plaintiff is not capable of performing skilled, semi-skilled, or unskilled work, and her mental impairments result in extreme limitations in the ability to engage in daily activities, interact socially, and maintain concentration, persistence, or pace.[139]  Additionally, Plaintiff will be absent from work more than four days per month due to her mental impairments.[140]  The ALJ properly considered this

---

[134] See 20 C.F.R. 404.1527(e)(2).
[135] See 20 C.F.R. 404.1512.
[136] See 20 C.F.R. 404.1527(c).
[137] D.I. 15 at 17-20.
[138] D.I. 8-3 at 84.
[139] D.I. 8-16 at 918-20, 923.
[140] Id. at 921.

22

opinion in light of the entire record, including treatment records from Dr. Ram's own health clinic, Focus Behavioral Health, which consistently recorded Plaintiff's normal speech, intact language skills, normal attention span, intact insight and judgment, and logical and appropriate thought content without evidence of hallucinations or delusions.[141]

Accordingly, the ALJ reasonably found Dr. Ram's disability questionnaire and medical opinion inconsistent with the objective medical evidence in the record as a whole when affording the opinion little weight.[142] The ALJ properly explained Dr. Ram's opinion lacked support within his own record, and he provided contradicting opinions throughout his reports.[143] Therefore, the court finds the ALJ afforded appropriate weight to Dr. Ram's findings.

### b. Dr. Kushner

The ALJ assigned little weight to treating physician, Dr. Kushner's opinion concerning Plaintiff's likelihood to be off task for twenty-five percent (25%) or more of a typical workday due to her mental impairments.[144] As noted by the ALJ, although Dr. Kushner is Plaintiff's treating physician, portions of his opinion are not consistent with the record as a whole.[145] The ALJ reasonably afforded little weight to the portion of his opinion that was based primarily on Plaintiff's self-reported psychiatric complaints,

---

[141] D.I. 8-14 at 780, 785, 791, 800; D.I. 8-16 at 912, 914.
[142] D.I. 8-3 at 84 (explaining inconsistencies in Dr. Ram's questionnaire and relevant treatment records from Focus Behavioral Health).
[143] *Id.*
[144] D.I. 8-3 at 84-85; D.I. 8-16 at 932.
[145] *Id.* at 84; *see* 20 C.F.R. 404.1527(c).

rather than his objective medical findings.[146] Although Dr. Kushner is Plaintiff's treating physician, he does not actively treat her mental impairments, and the ALJ reasonably found his opinion inconsistent with treatment records from Focus Behavioral Health documenting Plaintiff's consistent denial of experiencing psychiatric problems or symptoms at several visits between July 2016 and January 2017.[147] Accordingly, the ALJ reasonably afforded little weight to Dr. Kushner's opinion concerning Plaintiff's mental impairments.

Plaintiff also suggests the ALJ rejected the opinion of Dr. Kushner, but Dr. Kushner's medical opinion was given great weight to the extent it was consistent with the record as a whole.[148] Specifically, the ALJ provided great weight to Dr. Kushner's findings that Plaintiff is capable of sitting and standing and/or walking for at least six hours in an eight hour work day, as supported by his disability questionnaire, his treatment records, and the results of Plaintiff's MRI in January 2015.[149] Accordingly, the ALJ fully considered Dr. Kushner's opinion in light of the record as a whole and properly afforded great weight to the extent it was consistent with the objective medical evidence.[150] Moreover, the ALJ properly discounted Dr. Kushner's opinion where it contradicted the objective medical evidence in the record.[151] Therefore, the court finds the ALJ afforded appropriate weight to Dr. Kushner's findings.

---

[146] D.I. 8-3 at 83; see D.I. 8-10 at 464-97; D.I. 8-11 at 540-89; D.I. 8-13 at 645-732.

[147] D.I. 8-3 at 83-84; D.I. 8-14 at 780, 785, 791; D.I. 8-16 at 914.

[148] D.I. 15 at 18-19; D.I. 8-3 at 84.

[149] D.I. 8-3 at 84.

[150] D.I. 8-3 at 84-85.

[151] See 20 C.F.R. 404.1527(c).

## 2. Severity Findings

Plaintiff contends the ALJ erred in finding her symptoms of bipolar disorder and anxiety non-severe because her symptoms cause more than a minimal effect on her ability to sustain employment.[152] Plaintiff alleges each employment termination during the period from her alleged onset date was due to the severity of her depression and anxiety.[153] Specifically, Plaintiff claims the ALJ mischaracterized Plaintiff's testimony and discredited the severity of her bipolar disorder and anxiety without a clear and satisfactory explanation.[154] When finding Plaintiff's mental impairments non-severe, the ALJ assessed Plaintiff's functional limitations under the four broad functional areas provided by the disability regulations for evaluating mental disorders.[155]

Under the first functional area concerning understanding, remembering, or applying information, the ALJ found no limitation.[156] Plaintiff's written testimony reported needs for reminders, difficulty focusing when depressed, and difficulty following spoken instructions.[157] However, the ALJ based his finding on Plaintiff's ability to check her blood sugar and blood pressure on a daily basis and her lack of need for reminders to take care of personal needs and grooming.[158] Furthermore, Plaintiff testified she is able to prepare her own meals, perform light household cleaning chores,

---

[152] D.I. 15 at 11-15.

[153] D.I. 15 at 13-15.

[154] D.I. 15 at 15 (citing *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981); *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001)).

[155] D.I. 8-3 at 80; *see* 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.00(c).

[156] D.I. 8-3 at 80.

[157] D.I. 8-6 at 202, 206-08; *see* D.I. 8-3 at 80 ("[C]laimant reports difficulty remembering and following directions.").

[158] D.I. 8-3 at 80; *see* D.I. 8-6 at 202, 204.

25

shop in stores, watch television, and read.[159]  Additionally, the treatment records from

Focus Behavioral Health noted Plaintiff was observed with intact memory and cognitive

abilities from March 2016 to February 2017.[160]  The court finds substantial evidence

supports the ALJ's finding of no limitation understanding, remembering, or applying

information.

Under the next functional area, the ALJ found Plaintiff has no limitation

interacting with others.[161]  Although Plaintiff self-reported symptoms of social isolation

and remaining at home due to anxiety and fear, the ALJ pointed to evidence in the

record showing Plaintiff lives with her family, attends church regularly, and does not

have problems getting along with family, friends, neighbors, or others, including

authority figures.[162]  Further, treatment records from Focus Behavioral Health reveal

evidence of Plaintiff's cooperative behavior, normal speech, and intact language skills

on a consistent basis from March 2016 to February 2017.[163]  Accordingly, the court

finds substantial evidence supports the ALJ's conclusion of no limitation interacting with

others.

Under the third functional area, the ALJ found Plaintiff has no limitation

concentrating, persisting, or maintaining pace.[164]  Plaintiff asserted difficulty focusing,

finishing what she starts, and attributed her inability to maintain employment to her

---

[159] D.I. 8-3 at 80; *see* D.I. 8-6 at 202, 204-06.
[160] D.I. 8-14 at 780, 785, 791, 801; D.I. 8-16 at 912, 914; *see* D.I. 8-3 at 80.
[161] D.I. 8-3 at 80.
[162] D.I. 8-6 at 202-08; D.I. 8-3 at 80.
[163] D.I. 8-14 at 780, 785, 791, 800-01; D.I. 8-16 at 912, 914; *see* D.I. 8-3 at 80.
[164] D.I. 8-3 at 80.

failures to keep up with relevant tasks.[165] However, the ALJ found evidence of Plaintiff's ability to engage in household cleaning chores, shop in stores, watch TV, and read.[166] Additionally, Plaintiff testified about her ability to drive.[167] The ALJ found this evidence consistent with treatment records from Focus Behavioral Health documenting Plaintiff's normal attention span and logical and appropriate thought content without evidence of hallucinations or delusions from March 2016 to February 2017.[168] Accordingly, the court finds substantial evidence supports the ALJ's conclusion of no limitation concentrating, persisting, or maintaining pace.

Under the fourth functional area, the ALJ determined Plaintiff has a mild limitation adapting and managing herself.[169] Plaintiff reported difficulty handling stress and changes in routine, but the record demonstrated her ability to perform personal care activities such as preparing meals, household chores, going outside without supervision, shopping, attending church regularly, and spending time with others.[170] Plaintiff claims the ALJ erred in his severity finding because Plaintiff had a history of

---

[165] D.I. 8-6 at 205-07; D.I. 8-2 at 21-22; *see* D.I. 8-3 at 80.

[166] D.I. 8-3 at 80; *see* D.I. 8-6 at 202-06.

[167] D.I. 8-2 at 18; *see* D.I. 8-3 at 80.

[168] D.I. 8-14 at 780, 785, 791, 800-01; D.I. 8-16 at 912, 914; *see* D.I. 8-3 at 80.

[169] D.I. 8-3 at 80-81. Social Security defines "adapt or manage onself" as the "area of mental function refer[ring] to the abilities to regulate emotions, control behavior, and maintain well being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[170] D.I. 8-6 at 202-08; *see* D.I. 8-3 at 80-81.

mental health problems that were not considered by the ALJ.[171] Although the ALJ did not elaborate on Plaintiff's mental health history, the ALJ is not required to discuss every piece of evidence in his analysis.[172]

The ALJ pointed to treatment records from Focus Behavioral Health documenting Plaintiff's logical thought content, intact associations, and intact insight and judgment documented from March 2016 to February 2017, and he concluded Plaintiff experiences a only mild limitation in adapting and managing herself.[173] The ALJ properly considered the objective medical evidence in the record as a whole and provided sufficient explanation for his conclusion, as Plaintiff's self-reported symptoms lacked support from the objective medical evidence.[174] Therefore, the court finds substantial evidence supports the ALJ's finding that Plaintiff experiences only mild limitations adapting and managing herself. Since Plaintiff's medically determinable depression and anxiety caused no limitations in the first three functional areas and only a "mild" limitation in the fourth area, the ALJ properly found Plaintiff's mental condition non-severe.[175]

---

[171] D.I. 15 at 11.

[172] See Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

[173] D.I. 8-3 at 80-81; see D.I. 8-14 at 780, 785, 791, 800-01; see D.I. 8-16 at 912, 914.

[174] See Hur, 94 F. App'x at 133 (implying that the ALJ may decline to reference specific evidence he does not find notable based on contradictory evidence in the record).

[175] 20 C.F.R. § 404.1520a(d)(1).

28

### 3.    RFC Assessment and Vocational Expert Hypothetical

Plaintiff contends the ALJ failed to properly assess her residual functional capacity or RFC. An RFC is an individual's ability to perform in a work setting despite impairments and limitations.[176] In making this finding, the ALJ must consider all of the claimant's impairments, including those that are non-severe. Although the ALJ may weigh the credibility of the evidence, he must indicate the evidence which he rejects and his reason(s) for discounting such evidence.[177]

In the current matter, the ALJ found Plaintiff possessed the residual functional capacity to perform light work with some additional environmental limitations. The Act defines light work when it:

> involves lifting no more than twenty pounds at a time with frequent or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range or light work, you must have the ability to do substantially all of these activities.[178]

The ALJ specifically found Plaintiff could work at a level consistent with the her past skilled or semi-skilled work.[179] Moreover, he determined her residual functional capacity as generally consistent with the most recent evaluation by state agency medical consultants regarding Plaintiff's physical and mental ability.[180]

---

[176] 20 C.F.R. § 404.1545.
[177] *Plummer,* 186 F.3d at 429.
[178] 20 C.F.R. § 404.1567(b).
[179] D.I. 8-3 at 84.
[180] *Id.* at 83-84.

29

Plaintiff further argues the ALJ posed a defective hypothetical question to the VE by failing to include reference to the ALJ's own finding of Plaintiff's mild limitation of adapting and managing oneself, which precluded the VE's testimony from being considered substantial evidence.[181] After defining Plaintiff's past relevant work under DOT codes, the ALJ posed a hypothetical question to the VE stating:

> I want you to assume you're dealing with an individual who's the same age as [Plaintiff]. She's now 53 with the same high school and educational background, the same past work experience. . . . [B]egin by assuming that this individual has the residual functional capacity for light work. . . . [and is] limited to only occasional crawling or climbing ladders, ropes or scaffolds, and this individual could not tolerate concentrated exposure to temperature extremes, humidity, strong odors, fumes, dust, chemicals or other respiratory irritants. Could this individual perform any past work?[182]

The VE testified "the individual could do all of the past relevant work."[183] The ALJ then added the limitation of only simple, routine, and repetitive tasks, with only brief and superficial interaction with the public or coworkers to the hypothetical, and the VE testified this individual would not be capable of performing past work.[184] However, the VE identified several other jobs in the national economy.[185]

The ALJ relied on the VE's testimony that Plaintiff "would be able to perform past work of receptionist, medical secretary, copy editor, and customer service representative as actually and generally performed" skilled and semi-skilled work to find Plaintiff not disabled within the Acts.[186] When arguing the ALJ posed a defective

---

[181] D.I. 15 at 15-17.
[182] D.I. 8-2 at 32.
[183] D.I. 8-2 at 31-32.
[184] D.I. 8-2 at 32.
[185] D.I. 8-2 at 32-33.
[186] D.I. 8-3 at 85.

hypothetical question to the VE, Plaintiff primarily relies on *Moore v. Colvin* as warranting remand.[187]

In *Moore*, the ALJ similarly conducted a functional limitation assessment of the plaintiff's mental impairment using the four broad functional areas of the disability regulations for evaluating mental disorders.[188] Although the ALJ found no limitation in three out of the four functional areas, the plaintiff was found to have a mild limitation in the third functional area of concentration, persistence, and pace.[189] The court held the ALJ properly found the plaintiff's depression as non-severe.[190] However, as the ALJ "found that [the plaintiff's] non-severe depression was medically supported, and having acknowledged that there were mild limitations associated therewith, the ALJ had a duty to address those limitations in the RFC assessment *and the hypothetical posed to the VE*."[191] The court remanded the case to the Commissioner with instructions to include the foregone limitations in the hypothetical question posed to the VE and to re-assess the plaintiff's RFC and ability to return to past relevant work.[192]

A hypothetical question posed to a VE "must reflect *all* of a claimant's

---

[187] *Moore v. Colvin*, 239 F. Supp. 3d 845 (D. Del. 2017); *see* D.I. 15 at 17.

[188] *Moore*, 239 F. Supp. 3d at 856-58.

[189] *Id.* at 857.

[190] *Id.* at 857-58.

[191] *Id.* at 860-61 (citing *Harmon v. Astrue*, Civ. No. 10-6781, 2012 WL 94617, at *2 (E.D. Pa. Jan. 11, 2012)) (emphasis added); *see Moore*, 239 F. Supp 3d at 860 ("[T]he ALJ . . . acknowledged that Moore suffered from 'medically determinable affective disorder' which causes 'minimal limitation in [Moore's] ability to perform basic mental work activities.'").

[192] *Moore*, 239 F. Supp. 3d at 861.

31

impairments."[193] Providing guidance on this requirement, the Third Circuit Court of Appeals has stated that an ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant. . . . [But] the hypotheticals posed must 'accurately portray' the claimant's impairments, and the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'"[194]

Other district courts in this circuit have similarly remanded cases for failure to include established mild and moderate limitations in hypothetical questions posed to the VE.[195] For example, in *Davis v. Astrue*, the ALJ determined the evidence in the record supported a finding of only a mild limitation in the plaintiff's social functioning and a moderate limitation in maintaining concentration, persistence, or pace.[196] However, the ALJ omitted both of these limitations from the hypothetical posed to the VE.[197] The court adopted the Magistrate Judge's determination that "once the ALJ found [the plaintiff] moderately limited in maintaining concentration, persistence of pace, and

---

[193] *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)).

[194] *Rutherford v. Barnhart*, 399 F.3d 546, 553-54 (3d Cir. 2005) (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)) (explaining proper interpretation of the requirement that hypothetical questions to the VE "must reflect all of a claimant's impairments").

[195] *Davis v. Astrue*, Civ. No. 06-3350, 2007 WL 2248830, at *3-5 (E.D. Pa. July 30, 2007). The court suggested that an ALJ's failure to specifically include credibly established, medically determinable, moderate and mild limitations in the hypothetical posed to the VE requires remand. *Id.* at *4 (citing *Thompson v. Barnhart*, Civ. No. 05-395, 2006 WL 709795, at *14-15 (E.D. Pa. Mar. 15, 2006) ("[T]he ALJ's determination that [the plaintiff] suffers mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration is not properly reflected in the hypothetical question to the VE.")).

[196] *Davis*, 2007 WL 2248830, at *3.

[197] *Id.*

32

mildly limited in social functioning, *the ALJ was required to include those limitations in the hypothetical question posed to the vocational expert.*"[198]

Third Circuit precedent requires the ALJ to pose a complete and accurate hypothetical question to the VE, specifically reflecting all impairments "as contained in the record."[199] Here, the ALJ noted Plaintiff's mental impairments were considered in his RFC assessment, without explaining how they impacted the assessment, and he failed to account for Plaintiff's medically determinable, mild limitation performing basic mental work activities in the hypothetical posed to the VE.[200] Defendant argues the ALJ was not required to incorporate the mild limitations into the RFC analysis because an ALJ "may conclude that a claimant has mild limitations in one or some of the four broad functional areas at step two, but then conclude that these limitations do not translate into any necessary work restrictions in the RFC assessment so long as substantial evidence supports the ALJ's conclusions."[201]

Specifically, Defendant contends the ALJ relied on medical evidence in the record showing no mental health limitations in Plaintiff's treatment in order to formulate an RFC without the vocationally relevant mental limitations.[202] However, the ALJ, using identical phrasing as the ALJ in *Moore,* acknowledged Plaintiff does suffer from "medically determinable mental impairments of bipolar disorder and anxiety," which

---

[198] *Id.* (emphasis added).
[199] *Rutherford*, 399 F.3d at 553-54 (citing *Podedworny*, 745 F.2d at 218).
[200] D.I. 8-3 at 80-81; *see Moore*, 239 F. Supp. 3d at 860-61.
[201] D.I. 19 at 11 (quoting *Chandler v. Berryhill*, Civ. No. 16-4516, 2018 WL 3575258, at *5 (E.D. Pa. July 24, 2018)).
[202] D.I. 19 at 11-12.

33

cause "minimal limitation in [her] ability to perform basic mental work activities."[203]

Defendant does not offer a separate interpretation of *Moore* or attempt to distinguish

the striking similarities of that case to the present one.[204] Under *Moore* and relevant

decisions throughout this circuit, when finding Plaintiff's non-severe mental impairments

were medically supported and translated into a minimal limitation for performing basic

mental work activities, the ALJ had a duty to address the mild limitation in the

hypothetical question posed to the VE.[205]

Furthermore, although the ALJ found Plaintiff experiences only a mild limitation,

rather than mild and moderate limitations as in *Davis*, the court suggested the ALJ

would be equally required to include an established, medically determinable mild

---

[203] D.I. 8-3 at 80 ("The claimant's medically determinable mental impairments of bipolar disorder and anxiety do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe."). The ALJ in *Moore* used precisely the same language as the ALJ in the current case when discussing the plaintiff's non-severe mental impairment, and the *Moore* court interpreted the ALJ's finding as credibly establishing a "'medically determinable affective disorder,' which causes 'a minimal limitation in [the plaintiff's] ability to perform basic mental work activities.'" *Moore*, 239 F. Supp. 3d at 860 (citing D.I. 8-2 at 24 ("The claimant's medically determinable affective disorder(s) does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non[-]severe.")).

[204] *See Moore,* 239 F. Supp. 3d at 849-54; *see generally* D.I. 19; *see also* D.I. 21 at 5-6. Accordingly, the ALJ's determination that Plaintiff suffers from a work restriction as a result of her bipolar disorder and anxiety precludes Defendant's application of the standard set forth in *Chandler. See* D.I. 19 at 11 (quoting *Chandler*, 2018 WL 3575258, at *5).

[205] *Moore*, 239 F. Supp. 3d at 860-61 (internal citations omitted) ("Having found that Moore's non-severe depression was medically supported, and having acknowledged that there were mild limitations associated therewith, the ALJ had a duty to address those limitations in the RFC assessment and the hypothetical question posed to the VE.").

34

limitation in the hypothetical, even without an accompanying moderate limitation.[206] When rejecting a similarly posed hypothetical, the court noted that an ALJ's hypothetical description to the VE must be fully and "sufficiently specific to permit the vocational expert to render an informed opinion."[207] This interpretation is consistent with the established requirement that a VE's opinion can only be considered substantial evidence if it reflects "*all* of the claimant's impairments that are supported by the record."[208] Thus, the ALJ was required to include Plaintiff's established limitation on her ability to perform basic mental work activities resulting from her mild limitation adapting and managing herself in the hypothetical posed to the VE.

To be sure, the ALJ was not required to include every impairment Plaintiff asserted without support from the objective medical evidence, such as the intensity or persistence of her mental impairments.[209] Nevertheless, the ALJ's own findings documented Plaintiff's medically determinable, mild limitation of adapting and managing herself and concluded it translates into a limitation for performing basic mental work activities.[210] As such, the ALJ improperly failed to include this limitation in the

---

[206] The court did not distinguish between cases requiring remand for failure to include moderate limitations or both moderate and mild limitations in the relevant hypothetical questions. *Davis*, 2007 WL 2248830, at *3-4. Instead, the court remanded the case with direction to equally include omitted mild limitations to ensure "*all* of the claimant's impairments . . . supported by the record" were posed to the VE. *Id.* at *4-5; *see also Washington v. Astrue*, Civ. No. 08-2938, 2009 WL 855893, at *1-2 (E.D. Pa. Mar. 31, 2009) (holding the ALJ erred by failing to include mild limitations for the plaintiff's non-severe anxiety in her RFC and hypothetical posed to the VE).

[207] *Davis*, 2007 WL 2248830, at *3.

[208] *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) (emphasis added)).

[209] *Rutherford*, 399 F.3d at 553-54.

[210] D.I. 8-3 at 80.

hypothetical question and deprived the VE of assessing a complete and accurate portrayal of all of Plaintiff's medically determinable impairments.[211]

Therefore, the court determines the ALJ based his assessment upon substantial evidence presented in the record but failed to properly address Plaintiff's mild limitations in the RFC assessment and the hypothetical question posed to the VE. Plaintiff further contends the ALJ's determination that Plaintiff is able to perform past skilled and semi-skilled work is not supported by substantial evidence.[212] Having concluded that remand is warranted to give the ALJ an opportunity to include all credible limitations in the RFC assessment and VE hypothetical, the court need not reach a determination on Plaintiff's ability to perform past relevant work at this time.[213]

## V. Conclusion

For the foregoing reasons, I recommend that:

(1) Plaintiff's motion for summary judgment (D.I. 14) be granted in part and denied in part; and

(2) Defendant's motion for summary judgment (D.I. 18) be denied in part and granted in part.

I further recommend the court reverse the Commissioner's decision to the extent noted herein and remand the case in part to the Commissioner with instructions to:

---

[211] *Rutherford*, 399 F.3d at 553-54 (citing *Podedworny*, 745 F.2d at 218); *see Moore*, 239 F. Supp. 3d at 860-61.

[212] D.I. 15 at 17.

[213] *Moore*, 239 F. Supp. 3d at 861.

1) Address the excluded limitations in the hypothetical question posed to the VE as discussed in this Reccommendation; and

2) Re-assess Plaintiff's residual functional capacity and her ability to return to past relevant work.

This Report and Recommendation is filed pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date:  July 22, 2019                    /s/ Mary Pat Thynge
                                        Chief U.S. Magistrate Judge